(No. 30933.— )

The People of the State of Illinois, Defendant in Error, *vs.* Victor Ruiz, Plaintiff in Error.

*Opinion filed March 24, 1949.*

Ward H. Harris, of Chicago, for plaintiff in error.

Ivan A. Elliott, Attorney General, of Springfield, and John S. Boyle, State's Attorney, of Chicago, (John T. Gallagher, W. S. Miroslawski, Arthur F. Manning, and John S. Long, all of Chicago, of counsel,) for the People.

Mr. Chief Justice Fulton delivered the opinion of the court:

This is an appeal by the defendant, Victor Ruiz, from a judgment of the criminal court of Cook County finding him guilty of robbery and sentencing him to the Illinois State Penitentiary for a term of not less than five nor more than ten years. The sole contention made by the

defendant is that his conviction is palpably against the weight of the evidence.

It appears from the record that on May 13, 1947, one Edith Lucchesi was robbed of a wrist watch, a ring, and a pocketbook containing two dollars, at or near a restaurant located at 9006 Buffalo Avenue, Chicago, at about the hour of 4:30 o'clock A.M. On that same day Martin Avila, Viola Pena, Charles Ortega and Victor Ruiz were arrested in connection with said robbery. The ring was found in the possession of Avila and the watch was found in the possession of Ortega. Subsequently the above-named individuals were jointly indicted and were arraigned. Avila and Ortega pleaded guilty. Viola Pena and Ruiz pleaded not guilty, waived trial by jury and their cause was submitted to the court, and the court found both Viola Pena and Victor Ruiz guilty of robbery as charged in the indictment. Ruiz was sentenced to the Illinois State Penitentiary for a term of not less than five years nor more than ten years. Viola Pena was granted probation, Avila was granted probation and Ortega was sentenced to the Illinois State Penitentiary for a term of not less than two nor more than five years.

A review of the record indicates that Mrs. Lucchesi had been present in a tavern near the scene of this crime, unescorted, and had been observed by Ruiz in that tavern. Ruiz and the other defendants left the tavern and came to the restaurant and were in the restaurant for about five or ten minutes when Mrs. Lucchesi came in accompanied by two elderly Mexican men. Mrs. Lucchesi sat at the counter in the restaurant with the two men and talked with them. Subsequently, she approached Ruiz and asked him for a cigarette and, according to Ruiz, she made inquiry of him as to whether he had an escort and he told her to leave him alone because he was going back to work and thereafter she sat with the two Mexican men and then left

the restaurant. Ortega, Ruiz, Avila, Viola Pena and Irene Gonzales followed Mrs. Lucchesi from the restaurant. It then appears that Mrs. Lucchesi was either dragged or went into a hallway immediately adjoining the restaurant where she was struck and knocked down, and her purse, which contained two dollars, and her ring and wrist watch were taken from her. The evidence as to who actually took the ring, the wrist watch, and pocketbook from her is quite conflicting.

Shortly after his arrest Ruiz made a statement or confession which was admitted in evidence in which he stated that he met Ortega at about 7:00 P.M. and went to a tavern, and that they went to another tavern later in the evening where they saw Mrs. Lucchesi and stayed there until about 4:00 A.M., at which time they went to the restaurant where Martin Avila, Viola Pena and Irene Gonzales were, and talked with them. He then stated that he noticed Mrs. Lucchesi enter the restaurant with several Mexican men and that she came and asked him for a cigarette and that he gave her a cigarette and that at the time she took the cigarette Ruiz noticed the diamond ring on her finger and he stated to Ortega, "That's a nice ring, if it's not an imitation." He further stated that, a few minutes after he saw this woman leave the restaurant, Martin Avila, Viola Pena and Irene Gonzales went out of the restaurant, and a minute or so later he and Ortega went out of the restaurant and he heard scuffling in a doorway north of the restaurant and a woman scream, "Please don't take my ring." He then stated he and Ortega went into the hallway and that he saw Avila and the two girls scuffling with this woman who had asked him for the cigarette, that he grabbed the woman's hand but that she broke loose from him, that the scuffling went on for three or four minutes, that he, Avila, Ortega and the two girls ran out from the hallway, and he went

home. In that statement he said he did not see who took the wrist watch, the diamond ring or the purse. He also stated he could not tell just who it was that was trying to get the ring. He stated that he did not strike the woman at any time but that he did grab her hand.

At the trial he repudiated much of this statement on the ground that he was threatened by the police officers who took the statement and he denied that he ever placed his hand upon the woman and that he had any part in the scuffle.

The operator of the restaurant at 9006 Buffalo Avenue testified for the defense to the effect that Mrs. Lucchesi had been drinking and that she came to the restaurant and talked with several of the patrons and that she had to tell her to go outside the restaurant and not to bother the customers. She stated that Mrs. Lucchesi left the restaurant and then Victor Ruiz and the others stayed a few minutes and went out. Her testimony indicated that Ruiz and the other defendants went out about the same time in a group. The defendant Ortega testified that when he left the restaurant he saw Mrs. Lucchesi standing on the sidewalk in front of the doorway next to the restaurant and he saw her going into the hallway and he went in too. He admits that he picked up the wrist watch, and he states that he grabbed her hand and he tried to get the ring off her finger and was unsuccessful, but did get the wrist watch. He stated that Avila struggled with the woman also. Ortega says that he was in the hallway with the woman from about three to five minutes and at that time Viola Pena was upstairs, Viola Pena having been talking with the latter before going upstairs, and that Viola Pena came down after the struggle and told Ortega and Avila to let the woman go. Ortega says that Ruiz was by the door of the hallway but he did not come to the door until after the struggle was over. He states that

he does not know whether Ruiz placed his hands on the woman or not but stated that he did not believe Ruiz had anything to do with it. Ortega stated that when he reached over to take the ring off the woman's hand he caught hold of Avila's finger and took his ring off by mistake.

The defendant Avila testified that he took the ring and that the defendant Victor Ruiz was not inside the hallway at the time of the struggle but that he came in the hallway after the struggle was over. He testified that he left after Ruiz came into the hallway and that Ruiz and the two girls came with him and that the four of them went to his house and that Ruiz went home.

The defendant Viola Pena testified that she saw Mrs. Lucchesi in the restaurant and that when she and Ortega walked out of the restaurant Mrs. Lucchesi stated to them that she had left her purse and her key upstairs. Viola Pena states that she then went upstairs to look for the purse and key but that the door was locked, and when she came down Ortega and Avila had the woman in the hall and were scuffling with her and that she told them to leave the woman alone. Viola Pena stated that Ruiz never put his hands on the woman or struck her in any way and that he did not come upon the scene until Ortega, Avila and Viola Pena were ready to leave. She states that he did not come inside and that he did not put his hands on her. In a statement made to the police, shortly after the crime, she placed Ruiz as the chief participant in the scuffle.

Mrs. Lucchesi testified that Viola Pena did not touch her at any time and told the boys to leave her alone. She admitted having had some beer to drink but denies having been upstairs or in the tavern. When called upon to identify Ruiz she stated, "I couldn't be positive, but I could almost swear it was him." When asked if she could say whether he had touched her or not she stated, "I can't

remember that he positively did, but I kind of think that it was him." A police officer testified he found Mrs. Lucchesi's key in a room over the restaurant the next day. Later, on cross-examination, Mrs. Lucchesi was asked, "Now that you know this boy [defendant Ruiz] isn't the one that had the ring, do you think you have been mistaken?" and she answered, "I may have; I didn't see the face. They grabbed me from the shoulders back here." Later she was asked, "You are not sure now that he is the boy?" and answered, "No."

The contentions made by Ruiz are that the evidence adduced by the defense raised a reasonable doubt as to the guilt of Ruiz and that the identification of the defendant is doubtful. Our careful review of the record compels us to conclude that the identification of the defendant by the prosecuting witness is insufficient to form the sole basis for a conviction. Her testimony is wavering and indicated considerable doubt in her mind as to which of the defendants actually participated in the crime. We also believe that her testimony as to the occurrence is of little value in view of her condition at the time, and her credibility has also been attacked successfully by the testimony of a police officer and the operator of the restaurant.

Taking the testimony most favorable to the defendant, it appears that he was present at the place where this robbery was going on and that he knew or should have known what his friends were doing and stood in the doorway while they proceeded to scuffle with the woman and take away her valuables.

Ruiz's attempted repudiation of his confession does not show such coercion, duress or improper conduct on the part of police officers as would render the same inadmissible. It is to be noted that his counsel did not object to its admission in evidence.

By the presentation of this case and by the defense thereof, we do not believe that this court has been afforded

the full benefit of all the evidence which should have been presented for the People and of all of the defenses which should have been raised for this defendant. It appears from the record that Ruiz's counsel asked few questions and that counsel for Viola Pena, with whom this defendant was tried, actually conducted the trial. It also appears that much of the material evidence necessary to a conviction in this case was contained in an oral stipulation between respective counsel and the defendants. It is not our province to tell counsel how to conduct their cases, but we believe that where a defendant pleads not guilty, he is entitled to have the State prove him guilty beyond a reasonable doubt. We do not believe that the record shows sufficient evidence of this defendant's guilt to sustain the finding by the trial court. The mere fact that several are jointly indicted and some pleaded guilty and others waived a jury and stood trial does not excuse the informality in procedure and absence of proof of guilt as disclosed by this record.

As it was stated in *People* v. *Logan,* 358 Ill. 64, where the People's evidence fails to establish guilt of the defendant beyond a reasonable doubt the Supreme Court must reverse the resulting judgment of conviction. We believe that the defendant was entitled to have the evidence against him presented in open court in such manner as to clearly establish a record showing the commission of the crime and his participation in it. We do not believe that the record in this case is sufficient to sustain the conviction. Therefore, the judgment is reversed.

*Judgment reversed.*